IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| THOMAS BLACK, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO. 1:15 CV 1731 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | JUDGE DONALD C. NUGENT |
| GENERAL INFORMATION SOLUTIONS LLC, | ) ) ) | MEMORANDUM OPINION |
| Defendant. | ) ) | |


This matter is before the Court on Defendant, General Information Solutions LLC's

Motion for Summary Judgment. (ECF # 50, 75). Plaintiff, Thomas Black filed an Opposition to

the Defendant's motion, and Defendant filed a Reply in support of its request. (ECF #59, 60, 70,

71). The Defendant also filed a Motion to Strike the Expert Report and Testimony of Evan

Hendricks, which was opposed by Plaintiff. (ECF # 67, 76, 77). Plaintiff's Motion for Class

Certification is also before the Court. (ECF # 54, 55). Defendant filed an Opposition to that

Motion, and Plaintiff filed a Reply in Support of his position. (ECF #61, 72). The Court heard

oral arguments on the pending motions on February 9, 2018. (ECF #87).

## Facts and Procedural History[1]

In 2002, Plaintiff, Mr. Black was arrested for robbery.  His case was bound over from Cuyahoga County Municipal Court to the Cuyahoga Court of Common Pleas, where a grand jury returned a "no bill" and his case was dismissed.  (ECF #60-1, Ex. 12: Jones Report, p. 1).  The Cuyahoga Court of Common Pleas entered an Order expunging Plaintiff's arrest record on May 27, 2010.

In September of 2014, Mr. Black, applied for a job through the staffing company Robert Half International, Inc. ("RHI").  RHI hired Defendant, General Information Solutions, LLC ("GIS") to do an initial criminal background check which correctly identified that Mr. Black had no felony convictions.  This report did not include a search of the Cuyahoga County Municipal Court.  (ECF #62-1: 1st Pelchat Dec. ¶ 18).  In January of 2015, Plaintiff attempted to obtain a new placement through RHI with Nationwide Mutual Insurance Company ("Nationwide").  RHI told Mr. Black that Nationwide would "move forward" with him but they needed him to "go online and do the background report" and drug testing.  (ECF #85: Black Depo. at 43:6-10).[2]

---

[1] Except as otherwise noted, the factual summary is based solely upon the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the deposition transcripts filed with the Court as part of the summary judgment motion briefing.  Those facts which are contested and have some support through the presented evidence will be noted as being in dispute, but, for the purpose of this opinion shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

[2] Plaintiff's Brief in Opposition states that Mr. Black was told Nationwide "was extending an offer to him subject to the results of a criminal background check."  They cite his deposition at 43:6-10 in support of this statement.  That passage does not say, however, that they were offering him a position subject to a criminal background screening.  Rather, as set forth above, it says Nationwide "would move forward with" him, but that he needed to go online and complete a "background" report, which "was more like a job application," that asked about his job or work history, and needed to complete a drug test.

On February 2, 2015, RHI hired GIS to do a background check on Mr. Black, and GIS, in turn, assigned this check to one of its vendors, Wholesale Screening Solutions ("WSS"). A WSS researcher located a Municipal Court record belonging to Mr. Black which showed a 2002 felony robbery charge.[3] (ECF #85: Black Depo. 48:22-49:1; ECF #60-1, Ex. 12: Jones Report p. 1). The record showed that the Municipal Court found probable cause for the charges and bound the case over to the Court of Common Pleas. (ECF #60-1, Ex. 12: Jones Report, p. 2). The WSS researcher reviewing the record erroneously reported the record as a conviction. This error could have been prevented if she had followed WSS's policy of reviewing the entire docket and confirming the outcome in the transferee court, which showed no record of conviction.[4] (ECF #75-4, Ex. A: Agee Depo. 93, 94-95, 97).

On February 6, 2015, GIS completed the report. Sometime before February 8, RHI became aware of Mr. Black's robbery arrest. By February 8, 2015, Mr. Black had faxed documentation of the "no bill" and expungement of the robbery charge to RHI ; Lindsey, from RHI indicated that she received the documentation; and, Nationwide was "aware of the situation" and was "okay with it." (ECF #85: Black Dep. 49-50).[5] Around 7:00 p.m. on

---

[3] Despite the expungement order issued by the Cuyahoga County Common Pleas Court, that record is still available in the Municipal Court records for Cuyahoga County.

[4] The GIS report correctly noted that a search of the Cuyahoga County Common Pleas Court records using Mr. Black's name revealed a response of "no parties found matching criteria." (ECF #75-2, Ex. A, p. 2).

[5] Plaintiff's Brief in Opposition cites Mr. Black's testimony at 49:8-10 as support for the fact that his robbery arrest ended in a "no bill" and the case was dismissed. This testimony, along with his deposition testimony at 49:1-7, and 50:20-25 also shows that RHI received Mr. Black's documentation countering any report of conviction on this charge and, that Nationwide was "aware of the situation" and was "okay with it."

February 9, 2015, Mr. Black received a phone call from RHI informing him that it would not be placing him in the job with Nationwide, and that they were marking him as "unplaceable." RHI was not specific about why he had been marked as unplaceable. (ECF #85: Black Depo. at 50).

On February 10, 2015, GIS sent Plaintiff a pre-adverse action letter, together with a copy of their report, a summary of Plaintiff's rights under the Fair Credit Reporting Act ("FCRA"), a form to initiate a dispute of the record, and a form to request that RHI perform an individualized assessment of the reported information. (ECF #75-2, Ex. B). Mr. Black faxed a copy of his expungement order, request for individualized assessment, and written dispute form to GIS on February 18, 2015. However, he faxed the dispute letter intended for GIS to the fax number given for the submission of forms requesting an individualized assessment by RHI.[6] (ECF #85: Black Depo. 67:5-68:7, 71-72, 77-78; ECF #62-1: 1st Pelchat Dec. ¶ 23). This number is assigned to RHI for RHI's exclusive use in completing the individualized assessment process and is not monitored by GIS. (Id.). Therefore, GIS did not receive the dispute form. On February 25, 2015, GIS sent a letter to Mr. Black on behalf of RHI informing him that he would not be employed through RHI based "in whole, or in part, on the consumer report received from" GIS. (ECF #55-4, p. 6).

Mr. Black did not contact RHI or GIS again until April 7, 2015 when he faxed the dispute form to the proper fax number, on April 7, 2015. (ECF #85: Black Depo. 77-78). Upon

---

[6] The individualized assessment form specifically states:
> **What not to do**: Do not use this process to dispute information on your background report. To dispute information, please follow the instructions on the separate form enclosed that came with the background report. In particular, please use that form to dispute any criminal history about . . . any conviction that has been sealed or expunged based on a court order.

receipt of the dispute form, GIS investigated and within seven days had deleted Mr. Black's report and issued a corrected report to both RHI and Mr. Black. (ECF #85: Black Depo. 79, 86-87). Upon receipt of the new report, RHI was still placing candidates with Nationwide and RHI's representative testified that Mr. Black would have been considered for placement at that time if he had completed his references as requested. Because he did not complete the required references, RHI found him ineligible for placement with Nationwide. (ECF #53-4: Russell Dec. ¶ 11-13).[7] Mr. Black alleges that he was denied placement solely because of the erroneous background report, however, he offers no evidence to contradict the claim that he did not properly file a dispute over the report for well over a month, or that he would nonetheless have been placed following the correction of his report if he had provided the necessary verifiable references.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

---

[7] GIS claims that it recognized Mr. Black had not provided two verifiable references, including one from his most recent employer in April of 2015. (ECF #75-4, Ex. D: Russell Decl.¶ 11). Mr. Black acknowledges that he was told that he needed to submit new references because RHI could not reach his prior references, and that he never followed up on this request. (ECF #85: Black Depo. 92-93). He claims, however, that he was not notified of this issue until several months later, around September or October of 2015.

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex,* 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-

mover.  The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"  *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.  Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are

deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## Analysis

Plaintiff alleges that GIS willfully violated the Fair Credit Reporting Act ("FCRA") by knowingly failing to employ reasonable procedures to ensure the maximum possible accuracy when reporting the criminal history of applicants in the consumer reports it provided to potential employers. He does not allege any negligent violations. Mr. Black claims that he suffered injury, in the form of a lost employment opportunity. However, his Complaint seeks only statutory damages, and does not seek actual damages stemming from the alleged lost job opportunity.

## I. Standing

Although Defendant has not challenged Mr. Black's standing to bring a claim under the FCRA, subject-matter jurisdiction may be raised at any time by the court on its own initiative. See Fed. R. Civ. Proc. 12(b)(1); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (explaining that subject-matter jurisdiction may never be forfeited or waived and courts have authority to review subject-matter jurisdiction absent a challenge from any party). Federal courts are not courts of general jurisdiction. They are authorized to exercise jurisdiction only in certain circumstances, as set forth in Article III of the United States Constitution. Article III gives federal court jurisdiction over cases only when the Plaintiff demonstrate standing to bring the claims based on a showing of concrete and particularized injury that is redressable by the courts. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992).

The Sixth Circuit has made clear that Congressionally created statutory damages do not create a cognizable injury sufficient to automatically satisfy the requirement of standing. *Lyshe v. Levy*, 854 F.3d 855, 860-61 (6th Cir. 2017); *Hagy v. Demers & Adams*, Case No. 17-3696, p. 7 (6th Cir., February 16, 2018). "Standing is not met simply because a statute creates a legal obligation" or "allows a private right of action for failing to fulfil this obligation." *Hagy* at 8, (quoting *Lyshe*, 854 F.3d at 860). Therefore, the fact that Mr. Black is seeking statutory damages does not relieve him of the obligation to show that he has suffered a concrete and particularized injury that is redressable by the courts. Plaintiff is still required to present some evidence of injury, beyond the fact of "a bare procedural violation" or a simple inaccuracy in the reporting of his criminal history. *Hagy* at 6(citing *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016)). The only actual harm Mr. Black has alleged in the Complaint is a lost job opportunity.

This would be a harm sufficient to establish standing, and as alleged was clearly sufficient to withstand dismissal at the earlier stages of this case. However, now that discovery and summary judgment are complete, it is apparent that Mr. Black has provided no evidence to show that he suffered any such harm as a result of GIS's alleged violation of the FCRA.

Mr. Black claims that prior to receiving the erroneous criminal background report, RHI had told him that Nationwide was extending him an offer of employment. As set forth above, his deposition testimony does not support this claim. In his deposition Mr. Black testified that Nationwide was moving forward with him and asked him to take the next steps of filling out a background form and taking a drug test. There is no evidence that they said they would hire him so long as the GIS background report was favorable. After RHI apparently became aware of the robbery arrest, and after they received documentation showing the charge was no billed and expunged, RHI told him that Nationwide was "aware of the situation" and was "okay with it." (ECF #85: Black Dep. 49-50). A few days later, Mr. Black received a phone call from RHI informing him that it would not be placing him in the job with Nationwide, and that they were marking him as "unplaceable." (ECF #85: Black Depo. at 50). On February 25, 2015, GIS sent a letter to Mr. Black on behalf of RHI informing him that the decision was based "in whole, or in part, on the consumer report received from" GIS. (ECF #55-4, p. 6).

GIS has submitted evidence in the form of an affidavit from Shannon Russell, Branch Manager for the Beachwood office of RHI, which attests that after GIS corrected Mr. Black's report to reflect his lack of felony convictions, RHI was "still placing candidates in customer service representative positions with Nationwide and would have considered Mr. Black for placement at that same position upon receipt of his updated report and explanation of the same."

(ECF #53-4, ¶11).   Mr. Black was not placed, however, because he "had not provided two verifiable supervisory references" as required by RHI.  (*Id.*).[8]   He therefore, was not eligible for placement with Nationwide or any other client.  (*Id.*)  Even when he was later informed by RHI that his lack of references was preventing his placement, Mr. Black never followed through to provide the required references.  (ECF #53-4, ¶12; ECF #85 Black Depo. 92-93).  Ms. Russell attested that "[i]f Mr. Black had provided the requisite references, RHI could have presented him as a candidate for a job with Nationwide."  (ECF #53-4, ¶13).

Mr. Black has offered no evidence, whatsoever, that would contradict or challenge the credibility of Ms. Russell's attestations.   In fact, his deposition testimony supports Ms. Russell's attestation that the erroneous conviction report was not the reason he remained ineligible for placement at Nationwide.[9]  (ECF #53-4:  Russell Dec. ¶ 11-13; ECF #85: Black Depo. 92-93). He has provided no evidence of any other alleged injury resulting from the erroneous information originally reported in his background check.   Based on the specific allegations and facts of this case, and taking into account the clarification provided by the *Spokeo and Hagy* Courts, Mr. Black has not produced evidence sufficient to show that he has suffered a injury attributable to GIS, and has not, therefore, satisfied the requirements for standing under Article

---

[8]

Mr. Black's  2014 application form listed two references but provided no contact information for either reference.   (ECF #75-4, Ex. A, p. 7).

[9]

  According to his testimony, he had provided documentation of the "no bill" and expungement of his robbery charge to RHI prior to their decision to mark him as "unplaceable."  This suggests that they were already aware that he had not been convicted of this charge.  Further, he testified that prior to making the decision, RHI told him Nationwide was "aware of situation" and was "okay with it."  (Black Dep. 49-50).   Although GIS subsequently sent a letter indicating that his consumer report "was in whole or in part" the reason RHI deemed him unplaceable, the other available evidence shows that he was not eligible for placement even after the report was corrected.

III of the Constitution.  *See Spokeo*, 136 S. Ct. 1540; *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004);  *Hagy*, Case No. 17-3696 (6th Cir., February 16, 2018).   Even if there were evidence that Mr. Black suffered a concrete and particularized injury caused by GIS, he has not provided sufficient evidence to support his claim that GIS failed to maintain legally required procedures aimed at ensuring of its criminal background reports.

II.  15 U.S.C. §1681k(a)

Plaintiff's first cause of action alleges that GIS, willfully failed to maintain "strict procedures" designed to ensure that the public information it reported was "complete and up to date."  Section 1681k of the FCRA requires a consumer reporting agency which furnishes a report for employment purposes, such as GIS, to provide a consumer with notice of adverse public records information at the time it issues a report unless it maintains strict procedures designed to ensure that the information it reports is complete and up to date.  15 U.S.C. §1681k. The FCRA does not define "strict procedures" but federal courts have described them as "heightened standards for procedures used too collect information for employment purposes" that are "necessarily a more stringent standard" than the "reasonable procedures" required under 15 U.S.C. §1681e(b).  *Poore v. Sterling Testing Sys. Inc*., 410 F.Supp. 2d 557, 572 (E.D. Ky 2006).

In this case, there are no allegations that the report relied on old or incomplete information.  Rather, the researcher who completed the report misread or misinterpreted the information contained in the Municipal Court filings and, as a result, recorded a conviction where there had, in fact, been only a finding of probable cause and a transfer to the Court of

Common Pleas.  There is no evidence in the record that would suggest that the researcher viewed an outdated record at the Municipal Court or that her error stemmed from outdated information.  The information was simply wrong.   The researcher found the appropriate docket, saw an entry showing "credit for time served" and mistakenly reported a conviction in the Municipal Court. (ECF #75-4, Ex. A: Agee Depo. 97:16-21).  She did not register the later docket entries showing that the case had been bound over to the Court of Common Pleas, therefore, she did not follow through with a review of the records at the Court of Common Pleas.

The procedure WSS had in place required her to review the entire docket, and to follow through on any cases that were transferred to a higher court, by checking the full docket in the transferee court.  (ECF #75-4, Ex. A: Agee Depo. 93:4-22; 94-95; 97:16-21).  This procedure was described as by Plaintiff's own expert as the same procedure she would follow to review Mr. Black's criminal history.  (ECF #75-4, Ex. F: Jones Depo. at 44:6-12, 59:6-17).  There is no evidence to suggest that the WSS researcher would have failed to follow these same procedures and obtained the complete record from the Court of Common Pleas if she had correctly read the Municipal Court record showing that the case had been transferred.  Plaintiff has failed to present any evidence or argument that would suggest WSS or GIS could or should have employed some other stricter procedure that would have prevented the error that occurred in this case.  Simply put, if the researcher had followed WSS procedures, Mr. Black's report would not have shown a conviction based on the robbery charges.      The Sixth Circuit has clearly held that the FCRA is not a strict liability statute.  *Nelski v. Trans Union, LLC*, 86 Fed. Appx. 840, 844 (6th Cir. 2004).  Therefore, The failure of one individual investigator to follow established procedures, whether due to misinterpretation of the information available, or negligence in

following through, is not sufficient to create liability against the background check company. GIS maintained strict, multi-layered procedures designed to ensure that its reporting of criminal histories was complete, up to date, and as accurate as possible. Plaintiff's claim under FCRA §1681k(a), therefore, fails.

III. <u>15 U.S.C. § 1681e (b)</u>

Plaintiff's second cause of action is based on the allegation that GIS willfully failed to maintain reasonable procedures to assure the maximum possible accuracy of the information contained in a credit report, in violation of 15 U.S.C. § 1681e(b). As a result Mr. Black alleges that he suffered injury resulting from a loss of employment opportunity. The Sixth Circuit has held that the standard for determining whether an agency has maintained reasonable procedures to ensure maximum possible accuracy is whether the agency's procedures match what a reasonably prudent person would do under the circumstances. *Dickens v. Trans Union Corp*., 18 F. App'x 315, 317-18 (6th Cir. 2001).

"The FCRA does not impose strict liability for incorrect information." *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004). A credit reporting agency is not liable under 15 U.S.C. § 1681e(b) for reporting inaccurate information, so long as the agency follows reasonable procedures to prevent such an occurrence. *See, e.g., Spence v. TRW, Inc.*, 92 F.3d 380, 381 (6th Cir. 1996); *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir. 1982); *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 896 (5th Cir. 1998); *Hauser v. Equifax, Inc*., 602 F.2d 811, 814-15 (8th Cir. 1979). In order to state a prima facie case for a willful violation of this section of the FCRA, a plaintiff must show that:

1. the defendant reported inaccurate information about the plaintiff;

2.      the inaccuracy was due to the defendant reporting agency's willful failure to follow reasonable procedures to assure the maximum possible accuracy of the information;

3.      the plaintiff suffered injury; and

4.      the defendant's conduct was the proximate cause of the plaintiff's injury.

*Nelski* at 844.  The parties agree that GIS reported inaccurate information about Mr. Black's criminal history.   They disagree, however, on whether the remaining elements of a Section 1681e(b) violation can be established, and whether there is proof to support a finding of willfulness on the part of GIS.

A.  <u>Willful Failure to Follow Reasonable Procedures</u>

Even if Mr. Black had suffered a cognizable injury as a result of the mistake in the reporting of his criminal background, he would have to provide some evidence that GIS's procedures for ensuring the maximum accuracy of its reports were not reasonable.  He has failed to meet this burden.  The recent Sixth Circuit case of *Smith v. LexisNexis Screening Solutions, Inc.*, 837 F.3d 604 (6th Cir. 2016), provides guidance on what evidence is necessary to show that procedures for ensuring accuracy of consumer reports are willfully unreasonable.   Although the *Smith* court did find that the Plaintiff in that case had (barely) made out a case for a negligent violation of §1681e(b), where the screeners procedures did not require the input of middle names for the subjects being investigated, it rejected the finding of a willful violation.  In doing so, the court looked at three factors: (1) the screener's track record with its procedures had been reliable; (2) the screener corrected it mistake shortly after the plaintiff disputed the accuracy of the report; and (3) there was no evidence of similar complaints from other individuals.  *See,*

*Smith*, 837 F.3d at 611.   The court specifically noted that the overall dispute rate for the defendant's screening reports was a mere 0.2%, which, it deemed "remarkably low." *Id.*

In this case, there is no disagreement that GIS has an overall dispute rate that is lower than the rate achieved by the defendant in the *Smith* case.  Although Plaintiff challenges the validity of the formula used to determine this rate, it is the same formula considered by the Sixth Circuit in the *Smith* case, and as such is the proper method for comparing it to the rate found acceptable in *Smith*'s binding precedent.   From 2013 to 2016, GIS's dispute rate ranged from 0.159% (2015) to 0.216% (2016), with an average of 0.175%.  (ECF #75-2: Pelchat Decl. ¶ 27). The 2015 error rate for the external vendor, contracted by GIS to perform Mr. Black's investigation was 0.022%.  (ECF #75-2: Pelchat Decl. ¶ 29).  The error rate for GIS was essentially the same as the rate considered by the *Smith* court, and the error rate for WSS, the vendor who actually performed the search, was almost ten times lower than the rate the *Smith* court considered to be "remarkably low."   Under the Smith analysis, this factor provides significant proof that GIS's procedures ensured maximum accuracy of the reports it issued, and weighs heavily against any finding of a willful violation of  §1681e(b).

Likewise, the responsiveness GIS showed once Mr. Black properly notified it of a dispute indicates that GIS had procedures in place to ensure the ultimate accuracy of its reports and weighs against any finding of a willful violation.  There is no dispute that once Mr. Black faxed his dispute to the proper fax number, GIS completed its reinvestigation within seven days, and mailed a correction to the Plaintiff within ten days.  (ECF #75-2: Pelchat Decl. ¶ 25; ECF #85:  Black Depo. 77-79, 86-87).  GIS investigated and corrected Mr. Black's report in less than half the time the Sixth Circuit found to be timely in *Smith* case.  Although Plaintiff complains

that GIS did not respond to the first dispute form he filled out, Mr. Black admits that he sent that form to the wrong fax number.  GIS cannot be held responsible for a failure to respond to a form that it did not receive.

*Smith* also looked at the existence of similar complaints previously made against the screener to determine whether there was evidence of a willful violation of this section of the FCRA.  In that case there was no evidence of similar complaints against the defendant.  In this case, for the two years prior to Mr. Black's investigation, WSS performed 1,876,799 searches for GIS.  (ECF #75-2: Pelchat Decl. ¶ 32).  During the same time period GIS received 1,454 disputes involving WSS searches. (ECF #75-2: Pelchat Decl. ¶ 33).  Of these disputes, only ten others were successful disputes of reports showing a conviction on charges that were, in fact, dismissed.  (*Id*.).  This means that over two years, there had been only ten similar complaints made following 1,876,799 searches, and there have been no complaints filed for claims that a transfer was misread as a conviction, as occurred in this case.   Therefore, all of the *Smith* factors weigh heavily against any finding of a willful violation, and all provide strong evidence that GIS had not only reasonable, but very effective procedures in place to ensure the accuracy of its consumer reports.

Aside from satisfying the *Smith* factors, as set forth above, GIS and its vendor WSS had in place reasonable procedures, which if followed, would have insured the accuracy of its reports.  Courts have recognized that it is reasonable for a credit reporting agency to rely on outside research vendors.  *See, e.g., Wright v. Experian Info. Solutions, Inc*., 805 F.3d 1232, 1240 (10th Cir. 2015); *Dalton v. Capital Associated Industries, Inc*., 257 F.3d 409 (4th Cir. 2001)(holding credit reporting agency not liable for negligent or willful FCRA violation when it

relied on contractor who, in turn, relied on subcontractor to perform research).

In this case, GIS hired WSS as a vendor to perform searches. Plaintiff claims that GIS overlooked an "obvious risk" to obtaining maximum possible accuracy by using WSS as a vendor because WSS had been experiencing rapid growth. (ECF #60 at 16). Company growth, in and of itself, is not evidence of an unreasonable risk of error. In fact, it could just as easily be viewed as an indication that the Company is producing good results and is, therefore, in great demand. In this case, there is no evidence that WSS's growth had any negative impact on its reliability. WSS had a 0.022% error rate out of over a million searches it performed in 2015. It had multiple layers of procedures and policies in effect aimed at ensuring the general accuracy of the searches it performed for GIS, including, but not limited to: extensive vetting and training of researchers, jurisdiction-specific training, employment of "proofers," employee incentives for accuracy, required accuracy rates of 99.95-100% accuracy for researchers, and review and analysis protocol addressing errors. (ECF #75-4, Ex. A: Agee Depo. 34:1-35:20, 36:7-39:20, 40:11-46:3, 51:4-55:17, 63:5-66:7, 74:14-78:14, 106:5- 108:10). WSS also had specific procedures in place to prevent the type of error that occurred in this case, including a policy that all investigators must read the entire court record and must follow up any transferred cases by checking the entire docket in the transferee courts. In fact, Plaintiff's expert testified that these were reasonable procedures and indicated she would follow the same steps when searching for Mr. Black's criminal history. (ECF #75-4, Ex. F: Jones Depo. at 44:6-12, 59:6-17). There is no evidence to suggest that these procedures and policies were unreasonable, or that had they been followed, the error in Mr. Black's report would still have occurred.

In addition, GIS has procedures in place aimed at ensuring that its reports are accurate.

GIS requires all employees to undergo yearly FCRA training, and have other training programs in effect to ensure employees are education in FCRA compliance. (ECF #75-4, Ex. A: Pelchat Dec. ¶ 13). GIS also has procedures and policies in place to assess the quality of its reports, to spot check or "salt" its vendors, to track disputes and errors, and to improve internal processes as needed based on the information gained from these other procedures. (*Id.* at ¶ 7-14).

Plaintiff does not challenge the existence or efficacy of the specific policies and procedures that GIS and WSS had in place addressing the error that occurred in his case. Rather he claims that GIS has some policies and procedures that, if taken in the aggregate, could be improved to prevent future errors of various kinds. In support of this theory, he cites to a consent decree between GIS, another credit reporting agency, and the Consumer Financial Protection Bureau ("CFPB") in October of 2015. In the consent decree, GIS agreed to hire a consultant to assess its staffing, policies and procedures, and agreed to improve procedures aimed at ensuring accuracy, including using computer software to compare multiple reports issued on the same consumer, increasing auditing procedures, improving name-matching protocol, and excluding old or expired civil suits and judgments. (ECF #60-1, Ex. 1 pp. 9-13). Although it agreed to make these improvements, GIS did not admit that its current procedures were deficient in any of these areas, and did not admit any violations of the FCRA. (*Id.* at pg. 2). Further, Plaintiff has not provided any evidence, nor even alleged that the improvements agreed to under the Consent Decree would have prevented the error that occurred in this case, nor that they relate in any way to the issue involved in Mr. Black's report, i.e., the proper recording of bind-overs cases or the wrongful reporting of convictions based on municipal or county court records.

Although Plaintiff contends that as an overall business, GIS's procedures were inadequate to ensure maximum accuracy of all its reports, by preventing all types of errors, he has offered no evidence whatsoever to show that the procedures in place were unreasonable as a means of protecting against the mistake alleged in this case. To the contrary, the evidence clearly shows that GIS's policies relating to its choice of vendors resulted in retention of vendors with exceptionally low error rates; that WSS, the vendor in this case, had reasonable procedures in effect to ensure accuracy, including multilayered training and retention policies, and procedures on how researchers were to read and review municipal and county court records; and, that GIS's dispute handling procedures resulted in a timely and effective correction of the mistake made on Mr. Black's report.

### B. Injury/Proximate Cause

Mr. Black claims that prior to receiving the erroneous criminal background report, RHI had told him that Nationwide was extending him an offer of employment. Yet, within a week of receiving the report, the offer was rescinded and RHI had classified him as "unplaceable." Even assuming this to be true, GIS has submitted evidence in the form of an affidavit from Shannon Russell, Branch Manager for the Beachwood office of RHI, which attests that after GIS corrected Mr. Black's report to reflect his lack of felony convictions, RHI was "still placing candidates in customer service representative positions with Nationwide and would have considered Mr. Black for placement at that same position upon receipt of his updated report and explanation of the same." (ECF #53-4, ¶11). Mr. Black was not offered such placement, however, because he "had not provided two verifiable supervisory references" as required by

RHI.  (*Id*.).   He therefore, was not eligible for placement with Nationwide or any other client.  (*Id*.)  Although informed by RHI that this was barring his placement, Mr. Black never followed through to provide the required references.  (ECF #53-4, ¶12).  Ms. Russell attested that "[i]f Mr. Black had provided the requisite references, RHI could have presented him as a candidate for a job with Nationwide."  (ECF #53-4, ¶13).  Mr. Black has offered no evidence, whatsoever, that would contradict or challenge the credibility of Ms. Russell's attestations.  Neither has he provided evidence of any other alleged injury resulting from the erroneous information originally reported in his background check.

In addition, even if Mr. Black had suffered an injury as a result of the error in his report, he has offered no evidence to show that the error was caused by a lack of reasonable procedures to ensure maximum accuracy.  The Plaintiff has not alleged that the procedures WSS had in place, if followed, still would not have prevented the error that occurred on his report.  Plaintiff's own expert indicated in her testimony that the procedures WSS had in place for reviewing municipal court cases, and for following through on transferred cases was reasonable.  Therefore, even if GIS's overall procedures, whether specifically or in the aggregate, were deemed unreasonable, there is no evidence that a lack of reasonable procedures was the cause of Mr. Black's alleged injury.  Therefore, Mr. Black has not met his burden of showing that there is a material fact in dispute as to whether defendant's conduct was the proximate cause of any injury he suffered, and summary judgment on this claim is warranted.


IV. Willfulness

A willful violation of FCRA requires conduct that "is not only a violation under a

reasonable reading of the statute's terms, but show that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). This requires a finding that the Defendant's conduct was objectively unreasonable. *Id*. at 69-70. To that end, in order to prove a willful violation of the FCRA the plaintiff must show that the violation was either intentional or committed in reckless disregard for the duties imposed under a reasonable reading of the statute. *Garrett v. Experian Info. Solutions, Inc*., No. 11-12523, 2012 WL 1931324, at *4 (E.D. Mich. May 29, 2012). Recklessness occurs when an action entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Garrett*, 2012 WL 1931324, at *4 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007).

Plaintiff has not provided any evidence that would support a finding that GIS's alleged lack of appropriate procedures was either intentional or reckless under the relevant legal standard. As set forth above, GIS (1) had in place reasonable and/or strict procedures to ensure the accuracy, and completeness of its reports; (2) used only well vetted and well reputed subcontractors to assist in preparing its reports; (3) enjoyed a commendable report to error ratio under the *Smith* standard; and (4) timely reinvestigated and corrected its error upon notice of a dispute.[10] Plaintiff has presented no evidence upon which a jury could find that this conduct was

---

[10] Mr. Black alleges that he faxed his dispute regarding the report on February 18, 2015, weeks before GIS reinvestigated and corrected it. He does not dispute, however, that he faxed the dispute letter intended for GIS to the fax number given for the submission of forms requesting an individualized assessment by RHI. (ECF #62-3: Black Depo. 67:5-68:7; 1st Pelchat Dec. ¶ 23). This number is assigned to RHI for RHI's exclusive use in completing the individualized assessment process and is not monitored by GIS. 1st Pelchat Dec. ¶ 23). Therefore, GIS did not receive the dispute form. He also does not dispute that he later sent the dispute form to the correct fax number on April 7, 2015, and that by April 14, 2015, GIS had timely reinvestigated and corrected his report.

objectively unreasonable, or that GIS otherwise intentionally violated the FCRA.

IV.  Class Claims

The Plaintiff's motion for class certification must be denied.  When, as in this case, a plaintiff does not have a valid individual claim, he cannot serve as a class representative.  *See, e.g., Chambers v. American Trans. Air, Inc*., 17 F.3d 998, 1006 (7th Cir. 1994).   Because Mr. Black is only the putative class representative named in the Complaint, the motion for class certification must be denied, and the putative class claims must be dismissed.

**Conclusion**

For the reasons set forth above, Defendant GIS's Motion for Summary Judgment (ECF # 50, 75), is GRANTED; Defendant's Motion to Strike the Expert Report and Testimony of Evan Hendricks, (ECF #67), is DENIED; and,  Plaintiff's Motion for Class Certification is DENIED. (ECF # 54, 55).   This case is hereby dismissed.   IT IS SO ORDERED.

 /s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: February 26, 2018

_____

Tellingly, Mr. Black brought no claim under 15 U.S.C. §1681i for a failure to timely reinvestigate.